Filed 5/7/24
*See Dissenting Opinion*

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| In re D.M., a Minor Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E082401 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2000775) |
| v. | OPINION |
| DAISY M., | |
| Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County. Mona M. Nemat, Judge. Affirmed.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel and Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

1

Daisy M. (Mother) appeals from the juvenile court's order terminating her parental rights to her daughter, D.M. The only argument that Mother raises is that the Riverside County Department of Public Social Services (DPSS) conducted an inadequate investigation under state law implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA)). In particular, Mother argues that DPSS failed to comply with the expanded duty of initial inquiry under Welfare and Institutions Code section 224.2, subdivision (b) (§ 224.2(b)). (Unlabeled statutory citations refer to the Welfare and Institutions Code.)

We continue to agree with *In re Robert F.* (2023) 90 Cal.App.5th 492, 497 (*Robert F.*), review granted July 26, 2023, S279743, and *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677-678 (*Ja.O.*), review granted July 26, 2023, S280572, that the expanded duty of initial inquiry under section 224.2(b) applies only if the child was placed into temporary custody without a warrant. Also, for the reasons explained in *In re Andres R.* (2023) 94 Cal.App.5th 828, 840-856 (*Andres R.*), review granted November 15, 2023, S282054, we remain unpersuaded by *In re Delila D.* (2023) 93 Cal.App.5th 953 (*Delila D.*), review granted September 27, 2023, S281447, which declined to follow *Robert F.* We publish this opinion in order to explain why we are similarly unpersuaded by subsequent cases that follow *Delila D.*

Because D.M. was taken into custody pursuant to a protective custody warrant, the expanded duty of initial inquiry under section 224.2(b) was never triggered. Mother's argument therefore fails, and we accordingly affirm the order terminating parental rights.

BACKGROUND

In November 2020, DPSS received a referral alleging general neglect of D.M. by Mother. The referral arose from a domestic violence incident between Mother and her boyfriend. The boyfriend told law enforcement that Mother threatened him with a pedicure tool and that Mother smoked methamphetamine in front of D.M. Mother agreed to keep D.M. away from her boyfriend and to submit to an on-demand urine test. Mother denied having any Indian ancestry.[1]

The social worker later spoke with a maternal aunt and maternal grandmother. Both denied being aware of any domestic violence between Mother and her boyfriend. Maternal grandmother told the social worker that she did not have any Indian ancestry.

The social worker tried to reach D.M.'s father but later learned from paternal grandfather that he was in jail for violating a restraining order protecting paternal grandmother. Paternal grandfather denied having any Indian ancestry. Paternal grandfather expressed concern that father and Mother were abusing drugs and were incapable of parenting D.M. Paternal grandmother also denied having Indian ancestry. When DPSS reached father, he confirmed that he did not have any Indian ancestry.

In December 2020, DPSS filed a petition under section 300 as to D.M. As subsequently amended, the petition alleged that Mother engages in domestic violence in D.M.'s presence, that both parents have a history of substance abuse, that father fails to

---

[1]    "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

provide for D.M., that father has a criminal history including discharge of a firearm, robbery, and gang activity, and that Mother has pending criminal charges including battery and driving under the influence. DPSS attached an Indian Child Inquiry form (ICWA-010(A)) to the original petition, indicating that DPSS asked the parents, maternal grandmother, and paternal grandfather whether D.M. may be an Indian child. DPSS reported that as a result of its inquiry, it had no reason to believe that D.M. was an Indian child.

The juvenile court initially detained D.M. from father but released her to Mother. The court found that DPSS had conducted a sufficient ICWA inquiry and that ICWA did not apply. The court ordered Mother to file a Parental Notification of Indian Status form (ICWA-020), which she did. Mother denied that she had any Indian ancestry. When asked by the social worker later that month, both Mother and father denied Indian ancestry.

In March 2021, the juvenile court found that father was D.M.'s presumed father. Father filed an ICWA-020, indicating that he was unaware of any Indian ancestry.

Later that month, Mother was arrested for battery and driving under the influence. DPSS obtained a protective custody warrant, took D.M. into protective custody, and asked the court to detain D.M. from Mother. The court then detained D.M. from Mother and again found that ICWA did not apply.

At the contested jurisdiction and disposition hearing in May 2021, the court sustained the amended petition, removed D.M. from the custody of both parents, and

4

ordered reunification services for both parents. The court also found that DPSS had conducted a sufficient inquiry and that ICWA did not apply.

At the six-month and 12-month review hearings, the court continued reunification services for both parents. Mother continued to deny Indian ancestry, and the court found that DPSS had made a sufficient ICWA inquiry, that ICWA did not apply to D.M., and that there was no new information to the contrary.

At the contested 18-month review hearing in September 2022, the court terminated reunification services for both parents and set a selection and implementation hearing under section 366.26. Father was incarcerated for much of the reunification period and made little progress in services. Mother participated in some services but frequently missed drug tests, tested positive in April 2022, and refused to test thereafter.

In the report for the section 366.26 hearing, father again denied having any Indian ancestry. When the selection and implementation hearing was conducted in October 2023, the court again found that ICWA did not apply, and the court terminated parental rights.

DISCUSSION

Mother argues that the juvenile court erred by not requiring DPSS to conduct an adequate initial inquiry to determine whether D.M. is an Indian child within the meaning of ICWA, because DPSS did not ask various extended family members whether they had any Indian ancestry. In response, DPSS argues that no such inquiry of extended family members was required, because the statutory provision on which Mother relies does not apply. We agree with DPSS.

5

By statute, the county welfare department and the juvenile court have an "'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.'" (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), quoting § 224.2, subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*Id.* at p. 678.) This case does not concern the duty of further inquiry, which arises only if the court or the department has "reason to believe that an Indian child is involved." (§ 224.2, subd. (e).)

"The duty of initial inquiry applies in every dependency proceeding." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.) The department's "duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) In addition, "[f]ederal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.' (25 C.F.R. § 23.107(a) (2022).)" (*Ricky R.*, at pp. 678-679.) Similarly, "[s]tate law requires the court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' (§ 224.2, subd. (c).)" (*Id.* at p. 679.)

In addition, section 224.2(b) provides that "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307," then the department's initial inquiry duty includes asking "extended family members" about the child's Indian status. Mother argues that

6

DPSS violated section 224.2(b) by failing to ask various extended family members about Indian ancestry. DPSS responds that the section 224.2(b) duty was not triggered in this case, because D.M. was removed pursuant to a protective custody warrant.

There is a conflict in the case law on the application of section 224.2(b), and the California Supreme Court has granted review to resolve it. Pending guidance from our high court, we continue to agree with *Robert F.*, *supra*, 90 Cal.App.5th 492, and *Ja.O.*, *supra*, 91 Cal.App.5th 672, that the expanded duty of initial inquiry under section 224.2(b) applies only if the child was placed into temporary custody without a warrant. And for the reasons explained in *Andres R.*, *supra*, 94 Cal.App.5th 828, we are not persuaded by the criticisms of *Robert F.* that were expressed in *Delila D.*, *supra*, 93 Cal.App.5th 953.

Since *Andres R.* was published in August 2023, five published opinions have agreed with *Delila D.* that the duty to inquire of extended family members under section 224.2(b) is not limited to cases in which the children were placed into temporary custody without a warrant: *In re Samantha F.* (2024) 99 Cal.App.5th 1062 (*Samantha F.*); *In re L.B.* (2023) 98 Cal.App.5th 512 (*L.B.*); *In re C.L.* (2023) 96 Cal.App.5th 377 (*C.L.*); *In re Jerry R.* (2023) 95 Cal.App.5th 388 (*Jerry R.*); and *In re V.C.* (2023) 95 Cal.App.5th 251 (*V.C.*). Below we briefly summarize the analysis with which we agree, and we identify some of the reasons why we do not find the contrary cases persuasive.

I.     *The Statutory Analysis and Rationale of* Robert F., Ja.O., *and* Andres R.

The statutory analysis developed in *Robert F.*, *Ja.O.*, and *Andres R.* can be summarized as follows: (1) Section 224.2(b) provides that there is a duty to conduct

ICWA inquiry of extended family members "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307"; (2) subdivisions (a)(1) and (a)(2) of section 306 describe the only ways a child can be placed into the temporary custody of a county welfare department under section 306; (3) subdivision (a)(1) of section 306 authorizes a social worker to "[r]eceive and maintain" "temporary custody" of a child from a peace officer, and the only way a peace officer can take a child into "temporary custody" is "without a warrant" pursuant to sections 305, 305.6, and 625; (4) subdivision (a)(2) of section 306 authorizes a social worker to take a child into "temporary custody" "without a warrant"; (5) the only way a child can be placed into the temporary custody of a county probation department pursuant to section 307 is if the child was taken into temporary custody under section 305, which exclusively concerns warrantless removals; so (6) the extended family inquiry duty under section 224.2(b) is triggered only by warrantless removals.[2] (See *Andres R.*, *supra*, 94 Cal.App.5th at pp. 841-845; *Ja.O.*, *supra*, 91 Cal.App.5th at pp. 677-678; *Robert F.*, *supra*, 90 Cal.App.5th at pp. 500-501.)

The Legislature's creation of a duty to conduct ICWA inquiry of extended family members when a child is removed without a warrant makes sense because that is what the

---

[2]     *Delila D.* misdescribes the language of subdivision (a)(1) of section 306, asserting that it "authorizes the social worker to 'receive' the child and 'maintain' them in temporary custody." (*Delila D.*, *supra*, 93 Cal.App.5th at p. 971.)  That is not what the statute says.  Rather, it authorizes the social worker to "[r]eceive and maintain . . . temporary custody of a child who is described in Section 300, and who has been

8

Bureau of Indian Affairs (BIA) guidelines recommend. (U.S. Dept. of the Interior, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016) (BIA guidelines) pp. 23-24, 28, available at <https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf> [as of Mar. 28, 2024] [recommending extended family inquiry in cases of "emergency removal" and defining emergency removal as removal "without court authorization"]; see *Andres R.*, *supra*, 94 Cal.App.5th at pp. 849-851; *Ja.O.*, *supra*, 91 Cal.App.5th at pp. 680-681; *Robert F.*, *supra*, 90 Cal.App.5th at pp. 502-503.)

The BIA guidelines' recommendation and the Legislature's decision to follow it make sense because (among other reasons) the criteria for warrantless removal under both the BIA guidelines and California law include parental absence. (*Andres R.*, *supra*, 94 Cal.App.5th at pp. 852-853; BIA guidelines, at p. 24 [warrantless removal is permitted "when a young child is left without care or adequate supervision"]; § 305, subd. (a) [warrantless removal is authorized if "the fact that the child is left unattended poses an immediate threat to the child's health or safety"].) When the parents are unavailable, as is often the case with warrantless removals, it makes sense to require the child welfare department to ask extended family members whether the child has Indian ancestry.

---

delivered by a peace officer." (§ 306, subd. (a)(1).) Thus, by its terms, the statute authorizes the social worker to receive *temporary custody*. Consequently, the child must already be in temporary custody before the child is delivered by the peace officer. *Delila D.* elides the issue by incorrectly asserting that the statute authorizes the social worker to receive *the child*, rather than receiving *temporary custody* of the child. That point was made in *Andres R.*, *supra*, 94 Cal.App.5th at pages 842 to 843, but none of the cases following *Delila D.* mentions it.

9

II.    *The Contrary Case Law*

In our view, *Delila D.* and cases following it do not present a persuasive alternative account.  Given the statutory analysis summarized above, there would appear to be two principal ways one might attempt to defend the conclusion that the extended family inquiry duty under section 224.2(b) is not limited to warrantless removals: (1) One could argue that children removed pursuant to protective custody warrants are placed into temporary custody under section 306, thereby triggering the section 224.2(b) duty, or (2) one could argue that the conditional language in section 224.2(b) is not a limitation at all, so the extended family inquiry duty created by section 224.2(b) applies even to children who are not placed into temporary custody under section 306 or 307. *Delila D.* takes both approaches.  (*Delila D.*, *supra*, 93 Cal.App.5th at pp. 971-972, 974.) All of the cases following *Delila D.* adopt one or the other, but they all fail to address problems with both approaches that were described in *Andres R.*

A.    *Protective Custody Warrants, Section 306, and Section 224.2(b)*

Three cases agree with *Delila D.*'s claim that a child taken into protective custody pursuant to a protective custody warrant is placed into temporary custody pursuant to section 306, so the extended family inquiry duty under section 224.2(b) applies to such children.  (*Delila D.*, *supra*, 93 Cal.App.5th at pp. 971-972; *Jerry R.*, *supra*, 95 Cal.App.5th at pp. 414-417; *C.L.*, *supra*, 96 Cal.App.5th at p. 386; *Samantha F.*, *supra*, 99 Cal.App.5th at p. 1069.)  The cases reason that when a peace officer removes a child pursuant to a protective custody warrant and then delivers the child to a social worker, the social worker receives temporary custody of the child under section 306, subdivision

10

(a)(1). (*Delila D.*, *supra*, 93 Cal.App.5th at p. 971; *Jerry R.*, *supra*, 95 Cal.App.5th at p. 414; *C.L.*, *supra*, 96 Cal.App.5th at p. 386; *Samantha F.*, *supra*, 99 Cal.App.5th at p. 1069.)

We do not find those cases persuasive, because they fail to address a central problem with their position: Sometimes a child is not taken from parental custody at all until the child is detained by court order at the detention hearing or removed by court order at the disposition hearing. None of the cases argues (or could credibly argue) that such children are placed into temporary custody under section 306. Thus, even if section 306 applies to removals pursuant to protective custody warrants in addition to warrantless removals, the extended family inquiry duty still would not be universal—*it would not apply to children who were not removed before the detention hearing*. That problem was identified in *Andres R.*, *supra*, 94 Cal.App.5th at page 857, footnote 9, but none of the cases following *Delila D.* mentions it. As a result, the cases also never explain why the Legislature would create one duty of inquiry for children removed before the detention hearing and a different duty of inquiry for children who are first removed at the detention hearing or later. We are aware of no rationale for such differential treatment. In contrast, the differential treatment under *Robert F.*, *Ja.O.*, and *Andres R.* is easily explained: The Legislature created an extended family inquiry duty for warrantless removals because that is what the BIA guidelines recommend, and the recommendation makes sense because (among other reasons) warrantless removals are often the result of parental absence.

11

There is an additional problem with the cases' claim that a child who is removed pursuant to a protective custody warrant is placed into temporary custody pursuant to section 306. The cases assume that protective custody warrants are executed by peace officers, and the cases infer that subdivision (a)(1) of section 306—which concerns children delivered to social workers by peace officers—applies.

But protective custody warrants are not always executed by peace officers. Rather, sometimes protective custody warrants are executed directly by social workers, with no peace officer involved. For example, when a baby tests positive for illicit substances at birth, the social worker might serve the protective custody warrant at the hospital with no assistance from law enforcement. And even when peace officers are involved, they do not necessarily take the children into custody themselves and then deliver them to the social worker; rather, the peace officers might be present merely as a show of force to support the social worker, who serves the warrant and takes delivery of the children directly from the parents. The protective custody warrant in this case illustrates the point: It directs law enforcement to "assist" DPSS "by maintaining the peace during the execution of this warrant."

If a child is not delivered to a social worker by a peace officer but rather is taken into custody directly by the social worker (with or without law enforcement assistance) pursuant to a protective custody warrant, then there is not even an arguable basis to claim that the child was placed into temporary custody under section 306. Section 224.2(b) therefore would not apply to such children, even if *Delila D.*'s interpretation of subdivision (a)(1) of section 306 were correct. Again, *Delila D.* and cases following it do

12

not explain why the Legislature would create one duty of inquiry for children removed by peace officers pursuant to warrants and a different duty of inquiry for children removed by social workers pursuant to warrants. And again, we are not aware of any rationale for such differential treatment.

For the foregoing reasons, we are not persuaded by the cases that reason that children removed pursuant to protective custody warrants are placed into temporary custody under section 306.

B.      *The Absence of the Word "Only" in Section 224.2(b)*

Two cases agree with *Delila D.*'s argument that because section 224.2(b) begins with the word "if" instead of the words "only if," the statute's conditional language does not function as a limitation at all, so section 224.2(b) imposes the extended family inquiry duty even for children who were not placed into temporary custody under section 306 or 307. (*Delila D.*, *supra*, 93 Cal.App.5th at p. 974; *V.C.*, *supra*, 95 Cal.App.5th at pp. 259-260; *L.B.*, *supra*, 98 Cal.App.5th at p. 517.) The argument was assessed and found meritless in *Andres R.*, *supra*, 94 Cal.App.5th at pages 846 to 847, but the cases never mention *Andres R.*'s analysis.

That analysis, with which we continue to agree, can be summarized as follows: The extended family inquiry duty was created and imposed by section 224.2(b). No case argues (or could credibly argue) that without section 224.2(b) there would still be a statutory duty to conduct ICWA inquiry of all available extended family members in every case. The conditional language in section 224.2(b), which identifies the circumstances triggering the extended family inquiry duty, is the same as the conditional

13

language used in other statutes to identify the circumstances triggering other ICWA-related duties.  The duty of "further inquiry" is triggered "[i]f the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding." (§ 224.2, subd. (e).)  The duty to provide notice to the tribes is triggered "[i]f the court, a social worker, or probation officer knows or has reason to know . . . that an Indian child is involved."  (§ 224.3, subd. (a).)  Neither of those provisions says "only if"—they say that the duties arise "[i]f" the relevant circumstances are present.  But the provisions cannot be reasonably interpreted as imposing a duty of further inquiry even if there is *not* reason to believe an Indian child is involved, or a duty to provide notice to the tribes even if there is *not* reason to know an Indian child is involved.

The identical language in section 224.2(b) must be interpreted the same way.  It cannot be reasonably interpreted as imposing a duty to inquire of extended family even if the child was *not* placed into temporary custody under section 306 or 307.  (*Andres R.*, *supra*, 94 Cal.App.5th at pp. 846-847.)  Again, the case law contains no attempted rebuttal of that analysis.

In effect, *Delila D.* interprets the word "if" in section 224.2(b) to mean "regardless of whether."  But statutory conditions introduced by "if" rather than "only if" are commonplace in California statutes and do not carry that meaning.  To take just one more example:  Subdivision (c) of Penal Code section 1172.6 provides that "[i]f the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause."  The statute does not say "only if."  Thus, by *Delila D.*'s reasoning, the condition (if the petitioner makes a prima facie case) is not a limitation at

14

all, and the court must issue an order to show cause regardless of whether the petitioner has made a prima facie case. Moreover, subdivision (d)(3) of Penal Code section 1172.6 provides that, at the evidentiary hearing after issuance of an order to show cause, "[i]f the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." Again, the statute does not say "only if." Thus, by *Delila D.*'s reasoning, the condition (if the prosecution fails to carry its burden of proof) is not a limitation at all, and the court must vacate the conviction and enhancements regardless of whether the prosecution has carried its burden. Such a reading of Penal Code section 1172.6 would be absurd. But it is identical to *Delila D.*'s reading of section 224.2(b).[3]

Some cases rely on rule 5.481(a)(1) of the California Rules of Court, which requires ICWA inquiry of "extended family members" and does not limit that duty to cases in which the child is placed into temporary custody pursuant to section 306 or 307. (*Delila D.*, *supra*, 93 Cal.App.5th at pp. 966, 975; *L.B.*, *supra*, 98 Cal.App.5th at p. 518; *Jerry R.*, *supra*, 95 Cal.App.5th at p. 426; *V.C.*, *supra*, 95 Cal.App.5th at pp. 259-260; *Samantha F.*, *supra*, 99 Cal.App.5th at p. 1067.) That rule is invalid, however, because it conflicts with legislative intent. (*Andres R.*, *supra*, 94 Cal.App.5th at pp. 853-854.)

---

[3]     There is no shortage of similar examples. Subdivision (c) of Code of Civil Procedure section 437c provides that a "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The statute does not say "only if."

15

Similarly, if there were a rule of court that broadly imposed the duty of further inquiry, so that the duty would be triggered even if there were not reason to believe the child was an Indian child, such a rule would conflict with legislative intent and hence would be invalid. Or if there were a rule of court that broadly imposed the duty to provide notice to the tribes, so that the duty would be triggered even if there were not reason to know the child was an Indian child, such a rule would conflict with legislative intent and hence would be invalid. This is not the first time that a juvenile law rule of court has been invalidated for such a reason, namely, for creating an additional trigger beyond those provided by statute, even though the statutory triggers do not say "only if." (*In re Jesus J.* (1995) 32 Cal.App.4th 1057, 1060.)

Nor is it the first time that an ICWA-related rule of court has been invalidated for conflicting with legislative intent by applying ICWA-related protections beyond the circumstances specified by statute, even though the relevant statutes do not say "only if." *In re Abbigail A.* (2016) 1 Cal.5th 83 invalidated a rule that required dependency courts to apply ICWA's protections to children who are eligible for tribal membership but are not Indian children within the meaning of ICWA. (*Id.* at pp. 91-96.) And *In re W.B.* (2012) 55 Cal.4th 30 invalidated a rule that required juvenile courts to apply ICWA to all delinquency proceedings; the rule conflicted with legislative intent because by statute ICWA applied to delinquency proceedings "if the child is at risk of entering foster care or is in foster care." (*Id.* at p. 53 (italics omitted); see *id.* at pp. 53-58 & fn. 17.) The statute did not say "only if."

For all of these reasons, we are not persuaded by the claim that because section 224.2(b) begins with the word "if" instead of the words "only if," section 224.2(b) imposes the extended family inquiry duty even for children who were not taken into temporary custody under section 306 or 307, and we are similarly unpersuaded by the cases' reliance on rule 5.481(a)(1) of the California Rules of Court.

C.    *The BIA Guidelines*

The cases' treatment of other issues is no more convincing.  Two cases endorse *Delila D.*'s claim that "it simply doesn't make sense to apply different initial inquiries depending on how the child was initially removed from home."  (*Delila D.*, *supra*, 93 Cal.App.5th at p. 975; *V.C.*, *supra*, 95 Cal.App.5th at p. 260; *L.B.*, *supra*, 98 Cal.App.5th at p. 518.)  But neither of those cases mentions the BIA guidelines, which were cited by *Robert F.*, *Ja.O.*, and *Andres R.* as explaining why creating an extended family inquiry duty for warrantless removals does make sense.  (*Andres R.*, *supra*, 94 Cal.App.5th at pp. 849-851; *Ja.O.*, *supra*, 91 Cal.App.5th at pp. 680-681; *Robert F.*, *supra*, 90 Cal.App.5th at pp. 502-503.)

*Jerry R.* likewise never addresses the BIA guidelines.  And *Delila D.*'s response concerning the BIA guidelines consists of the puzzling assertion that *Robert F.*'s "argument misconstrues the definition of an emergency removal under both the federal regulations and California law."  (*Delila D.*, *supra*, 93 Cal.App.5th at p. 973.)  There is no definition of emergency removal in the federal regulations or in California law (and in any event California law cannot tell us what the BIA guidelines mean by "emergency

17

removal").[4]  (*Andres R.*, *supra*, 94 Cal.App.5th at pp. 850-851.)  The BIA guidelines, in contrast, do tell us that emergency removals are removals "without court authorization," i.e., warrantless removals.  (BIA guidelines, pp. 23-24.)

*C.L.* contains an extended discussion of federal law, ultimately concluding that "a removal under section 340 [i.e., a removal pursuant to a protective custody warrant] constitutes an emergency *proceeding* under the ICWA *regulations*."  (*C.L.*, *supra*, 96 Cal.App.5th at pp. 388-390, italics added.)  Whatever the merits of that conclusion and the analysis on which it is based, it is nonresponsive to the point made in *Robert F.*, *Ja.O.*, and *Andres R.*:  The BIA *guidelines* recommend extended family inquiry for emergency *removals* (not emergency *proceedings*, which are something else), and the BIA guidelines define emergency removals as removals without court authorization, i.e., warrantless removals.  (BIA guidelines, pp. 23-24, 28; *Andres R.*, *supra*, 94 Cal.App.5th at pp. 849-851; *Ja.O.*, *supra*, 91 Cal.App.5th at pp. 680-681; *Robert F.*, *supra*, 90

---

[4]  *Delila D.* cites 25 Code of Federal Regulations part 23.2 (2023), which defines "emergency proceeding" in terms of both "emergency removal" and "emergency placement" but leaves the latter two terms undefined.  (*Delila D.*, *supra*, 93 Cal.App.5th at p. 973.)  *Delila D.* also cites section 315, which provides that "[i]n the case of an Indian child," the detention hearing "shall be considered an emergency removal" under section 1922 of title 25 of the United States Code.  (*Delila D.*, *supra*, 93 Cal.App.5th at p. 973.)  That is not a definition of "emergency removal," just as "a koala is a mammal" is not a definition of "mammal."

Cal.App.5th at pp. 502-503.)  That recommendation explains the Legislature's decision to create a duty of extended family inquiry for warrantless removals.[5]

D.      Samantha F.

*Samantha F.* is the most recent published opinion to follow *Delila D.*  It articulates two additional reasons for declining to follow *Robert F.*:  "First, *Robert F.* misconstrues 'protective custody' as exclusive of 'temporary custody' in categorizing children removed by warrant as not in temporary custody before their detention hearing.  Second, *Robert F.*'s interpretation misconstrues federal ICWA law as supporting its view that the ICWA inquiry differs based on whether a child is removed by warrant."  (*Samantha F.*, *supra*, 99 Cal.App.5th at pp. 1068-1069.)  In our view, *Samantha F.* is mistaken on both points.

1.      *"Protective Custody" and "Temporary Custody"*

*Samantha F.* argues that the statutory terms "protective custody" and "temporary custody" refer to all children in custody before the detention hearing, so a child removed

---

[5]      In addition, *C.L.*'s conclusion that "a removal under section 340 constitutes an emergency proceeding under the ICWA regulations" (*C.L.*, *supra*, 96 Cal.App.5th at pp. 388-390) cannot be correct.  The regulations define an emergency proceeding as "any court action that involves an emergency removal or emergency placement of an Indian child."  (25 C.F.R. § 23.2 (2023).)  Although the issuance of a protective custody warrant under section 340 might be described as a court action, a removal pursuant to such a warrant is not a court action—it is something done in the field by a social worker or a law enforcement officer executing the warrant.  Similarly, although the issuance of an arrest warrant might be described as a court action, an arrest pursuant to such a warrant is not a court action—it is something done in the field by a law enforcement officer executing the warrant.  Because a removal under section 340 is not a court action, it cannot be an emergency proceeding under the ICWA regulations.

19

pursuant to a protective custody warrant is in temporary custody under section 306, triggering the section 224.2(b) duty. (*Samantha F.*, *supra*, 99 Cal.App.5th at p. 1069.) In support of that conclusion, *Samantha F.* cites various provisions of the juvenile court law purporting to show that the statutory terms "protective custody" and "temporary custody" are interchangeable. (*Id.* at pp. 1070-1072.) We find the analysis unpersuasive partly because it is based on a logical error and partly because it misinterprets various code provisions.

By its terms, the section 224.2(b) duty applies only to children taken into "temporary custody" under section 306 or 307. Thus, if the statutory term "temporary custody" refers only to children removed without a warrant, then the section 224.2(b) duty likewise applies only to children removed without a warrant. It does not matter if the term "protective custody" is sometimes used as an umbrella term encompassing both warrantless removals and removals pursuant to warrants. As long as the term "temporary custody" is not such an umbrella term but instead refers exclusively to warrantless removals, the section 224.2(b) duty is limited to warrantless removals and *Robert F.* is correct.

Put another way: Showing that "protective custody" includes "temporary custody" (or includes warrantless removals) would not undermine *Robert F.* Rather, showing that "temporary custody" includes "protective custody" (or includes removals pursuant to warrants) would undermine *Robert F.* Thus, for example, subdivision (a) of section 307.4 provides that when a child is taken into "temporary custody" under sections 305 through 307, the parents or other responsible adults must immediately be informed

20

that the child has been taken into "protective custody."  Therefore, as used in that provision, the term "protective custody" includes "temporary custody"—if the child is in "temporary custody," then the child is in "protective custody" as well.  But that proves nothing about whether *Robert F.* is correct.

*Samantha F.* argues that some statutes (such as section 307.4, subdivision (a)) use the term "protective custody" to include "temporary custody" (or to include warrantless removals).  (*Samantha F.*, *supra*, 99 Cal.App.5th at pp. 1070-1071.)  For the reasons just explained, those arguments are irrelevant and logically incapable of casting any doubt on *Robert F.*  Rather, in order to undermine *Robert F.*'s interpretation of section 224.2(b), *Samantha F.* would need to show that statutes use the term "temporary custody" to include "protective custody" (or to include removals pursuant to warrants).  *Samantha F.* attempts to make that showing by citing a few code provisions.  But *Samantha F.* misinterprets those provisions, so the argument fails.

*Samantha F.* cites subdivision (d) of section 306 and asserts that it "obviously applies to all children in predetention custody" even though it uses the term "'temporary custody.'"  (*Samantha F.*, *supra*, 99 Cal.App.5th at p. 1071.)  The statute provides that if a social worker has an Indian child in temporary custody and knows or has reason to believe the Indian child is a ward of a tribal court or lives on the reservation of a tribe "that has exclusive jurisdiction over child custody proceedings" under ICWA, then the social worker must notify the tribe no later than the next workday and provide relevant documentation.  (§ 306, subd. (d).)  *Samantha F.* reasons that because tribes have exclusive jurisdiction over all Indian children who live on reservations or are wards of

21

tribal courts, the provision must apply regardless of whether a child was removed without a warrant—"[w]hether the child was removed by warrant has nothing to do with the tribe's exclusive jurisdiction over such a case." (*Samantha F.*, *supra*, 99 Cal.App.5th at p. 1071.)

That reasoning reflects a misunderstanding of both state and federal law. Under federal law, tribes have exclusive jurisdiction of child custody proceedings involving children who live on reservations "except where such jurisdiction is otherwise vested in the State by existing Federal law." (25 U.S.C. § 1911(a).) The same federal statute further provides that tribes can decline to exercise jurisdiction, thereby ceding it to state courts. (25 U.S.C. § 1911(b).) Thus, if a state court is involved, exclusive tribal jurisdiction is not automatic. As a result, under California law the juvenile court in such a case must contact the tribe to determine whether the tribe wishes to accept transfer of the case or decline to exercise jurisdiction. (§ 305.5, subd. (b); Cal. Rules of Court, rule 5.483(d)(1)(B).) Contrary to *Samantha F.*'s interpretation, subdivision (d) of section 306 has nothing to do with such cases; it concerns only cases in which there is *no court involved*, i.e., warrantless removals. In such cases, the social worker must immediately contact the tribe. But if a court is involved, then the court will contact the tribe under section 305.5, subdivision (b). In sum, *Samantha F.* misreads subdivision (d) of section

306 and provides no reason to believe that it applies to anything but warrantless removals.[6]

Samantha F. likewise misinterprets subdivision (b)(7) of section 319. The statute provides that if there is reason to know that a child who is the subject of a detention hearing is an Indian child, then the report for the detention hearing must include "[a] specific and detailed account of the circumstances that caused the Indian child to be taken into temporary custody." (§ 319, subd. (b)(7).) Samantha F. concludes, "That again indicates that the Legislature views all children held before that hearing as being in temporary custody." (Samantha F., supra, 99 Cal.App.5th at p. 1071.) That conclusion is mistaken. Rather, there is a straightforward reason why subdivision (b)(7) of section 319 specifically targets only warrantless removals. If a known Indian child is removed without a warrant (i.e., taken into temporary custody), then the statute requires the social worker to provide the court with a detailed account of the facts that made the warrantless removal necessary. But if a known Indian child is removed pursuant to a protective custody warrant, then there is no need to impose such a requirement, *because the social worker has already provided the court with the relevant facts in the warrant application*.

---

[6]     Samantha F. makes a similar error concerning section 369, subdivision (a), which authorizes medical care for children in "temporary custody," and Health and Safety Code section 121020, subdivision (a)(3)(A), which authorizes HIV testing for children in "temporary custody." (Samantha F., supra, 99 Cal.App.5th at p. 1072.) If a court is involved, subdivision (b) of section 369 provides the same authorization for medical care and subdivision (a)(3)(A) of Health and Safety Code section 121020 provides the same authorization for HIV testing. The statutes thus exhibit the same structure as section 306, subdivision (d) and section 305.5, subdivision (b): One provision covers cases with no court involvement, and the other covers cases in which a court is involved.

23

There is no reason to believe that the term "temporary custody" in subdivision (b)(7) of section 319 applies to anything but warrantless removals.[7]

Samantha F.'s treatment of section 206 is similarly misguided and has the additional unfortunate consequence of undermining child safety. Section 206 provides that a minor cannot be held in "temporary custody in any building that contains a jail or lockup for the confinement of adults" unless certain conditions are met (e.g., the minor must be "under continuous supervision"). Samantha F. reasons that "[i]t is not plausible" that those conditions would be limited to minors removed without a warrant—the relevant protections should apply to any child removed with or without a warrant. (Samantha F., supra, 99 Cal.App.5th at pp. 1071-1072.) That reasoning is unsound because section 206 is not a general regulation of the housing of minors in jails or lockups for adults. Rather, section 206 creates an *exception* to a more general prohibition on housing children with adults, and it limits that exception to "temporary custody," i.e., warrantless removals.

---

[7] In addition, it would make sense for the Legislature to presume that any known Indian child removed before the detention hearing would be removed without a warrant. As Samantha F. acknowledges, even the court at the detention hearing cannot remove a known Indian child except when "necessary to prevent imminent physical damage or harm." (§ 319, subd. (d); see Samantha F., supra, 99 Cal.App.5th at p. 1075.) But the same standard applies to a social worker's warrantless removal of a known Indian child: Such a removal is authorized if it is "necessary to prevent imminent physical damage or harm to the Indian child." (§ 306, subd. (c).) Because known Indian children cannot be removed before the detention hearing except when necessary to prevent imminent physical damage or harm, and warrantless removal is authorized in such circumstances, it would make sense for the Legislature to presume that all predetention removals of known Indian children will be warrantless. For that additional reason, there is no basis to think that subdivision (b)(7) of section 319 is about anything other than warrantless removals.

24

Subdivision (a) of section 207.1 provides that children cannot be detained "in a jail or lockup, unless otherwise permitted by any other law," and the statute defines jails and lockups as detention facilities for adults (§ 207.1, subd. (g)(1)-(2)). The prohibition is general—it is not limited to "temporary custody." But other provisions create narrow exceptions to that general prohibition. In particular, subdivision (b) of section 207.1 authorizes holding "[a] minor 14 years of age or older who is taken into temporary custody by a peace officer on the basis of being a [delinquent minor]" in certain adult facilities if certain conditions are met, notwithstanding the general prohibition on detaining children in adult facilities. Section 206 is similar—it authorizes holding (alleged) dependent or delinquent minors in "temporary custody" in adult facilities as long as certain conditions (such as continuous supervision) are met, notwithstanding the general prohibition on detaining children in adult facilities.

Limiting the authorization for holding children with adults to warrantless removals ("temporary custody") makes very good sense. If a social worker applies for a protective custody warrant, the worker must have already done some investigation in order to gather the facts needed for the warrant application. In the process, the worker may have already identified relatives for placement. But even if no such placement options have been identified, the warrant will ordinarily be executed during the day, giving the worker some time to arrange for third-party care. For all of those reasons, when a child is removed pursuant to a protective custody warrant, the social worker will have both the familiarity with the family and the necessary time to arrange for an appropriate placement pending the detention hearing.

25

Warrantless cases are completely different. There may have been no prior investigation at all, so there might be no social worker who already knows the family. The parents themselves might be absent; parental absence is among the criteria for warrantless removal (§ 305, subd. (a)). And the exigent circumstances necessitating warrantless removal can arise at any time, including the middle of the night.

For all of those reasons, the Legislature sensibly created narrow authorizations for detaining children in adult facilities *in warrantless cases* in order to allow some more flexibility in dealing with the exigencies that warrantless removals commonly present. By interpreting "temporary custody" in section 206 to include removals pursuant to warrants, *Samantha F.* purports to expand *protection* for children. But *Samantha F.*'s erroneous interpretation actually expands an *exception* to the general prohibition on detaining children in adult facilities, thereby making it easier, not harder, to house children in such facilities.

In sum, we are not persuaded by *Samantha F.*'s arguments concerning the statutory terms "temporary custody" and "protective custody." In order to succeed, the argument would have to show that "temporary custody" includes "protective custody" or includes removals pursuant to warrants. But *Samantha F.* fails to make that showing. It may be true that "protective custody" is sometimes used broadly to include both warrantless removals and removals pursuant to warrants. But the juvenile court law's use of the term "temporary custody" is remarkably consistent, and it applies only to warrantless removals.

26

## 2.    *Federal Law*

*Samantha F.* contains an extended discussion of federal ICWA statutes and regulations, the BIA guidelines, and related California law.  (*Samantha F.*, *supra*, 99 Cal.App.5th at pp. 1073-1081.)  The aim of the discussion is to rebut the "erroneous claim that federal ICWA law counsels for inquiries into extended family only when a child is removed without a warrant." (*Id.* at p. 1073.)  We conclude that *Samantha F.*'s analysis is unsound.

It is useful to begin by reviewing the role played by federal authority in the position developed by *Robert F.*, *Ja.O.*, and *Andres R.*:  All three cases hold that under the plain language of section 224.2(b), ICWA inquiry of all available extended family members is required only if the child was removed without a warrant.  The Legislature's decision to impose that requirement makes sense because it is recommended by the BIA guidelines.  In particular, guideline C.7 recommends "that the State agency ask the family and extended family whether the child is a Tribal member or whether a parent is a Tribal member and the child is eligible for membership as part of the emergency removal and placement process," and guideline C.2 explains that an emergency removal is a removal "without court authorization." (BIA guidelines, pp. 23-24, 28; see *Andres R.*, *supra*, 94 Cal.App.5th at pp. 849-851.)  Thus, when a child is removed without court authorization, i.e., without a warrant, the BIA guidelines recommend that the state child protection agency inquire of extended family in order to determine whether the child is an Indian child.  By its plain language, that is precisely what section 224.2(b) requires.  And we know that the Legislature that enacted section 224.2(b) was aware of the BIA guidelines

27

and sought to conform California law to them in various respects. (See *Robert F.*, *supra*, 90 Cal.App.5th at pp. 502-503.) The BIA guidelines thus help to explain our Legislature's decision to require extended family inquiry for warrantless removals.

One additional feature of the legal landscape is helpful in evaluating *Samantha F.*'s analysis: The provisions of federal ICWA statutes and regulations, the BIA guidelines, and related California law can be grouped into two broad categories. One concerns the inquiry, investigation, and notice utilized to determine whether a child is an Indian child within the meaning of ICWA. (E.g., 25 U.S.C. § 1912(a); 25 C.F.R. §§ 23.11, 23.107, 23.111; §§ 224.2, 224.3; BIA guidelines, pp. 11-12, 28-35.) The other concerns the procedures and protections that apply to Indian children once they have been identified. (E.g., 25 U.S.C. §§ 1912(d)-(f), 1915, 1916, 1920, 1922; 25 C.F.R. §§ 23.110, 23.113, 23.114, 23.120, 23.121; §§ 224.4, 224.6, 361.31, 361.7, 366.24, 366.26, subd. (c)(1)(B)(vi), (c)(2)(B); BIA guidelines, pp. 42-44, 52-53.) By its terms, guideline C.7 belongs to the former category—it concerns the inquiry that a child protection agency should conduct to determine whether a child is an Indian child. (BIA guidelines, p. 28.)

*Samantha F.*'s discussion can be summarized as follows: First, *Samantha F.* argues for the conclusion that "all prepetition removals of Indian children in dependency cases are emergency removals" within the meaning of section 1922 of title 25 of the United States Code (§ 1922). (*Samantha F.*, *supra*, 99 Cal.App.5th at p. 1077; see *id.* at p. 1073 ["Any prepetition removal of an Indian child in a dependency case is an

28

'emergency removal'"].)[8]  Second, on that basis *Samantha F.* infers the further conclusion that all prepetition removals of all children are emergency removals within the meaning of BIA guideline C.7.  (*Samantha F.*, at p. 1078 ["the recommendation of BIA Guidelines, section C.7 applies to all prepetition removals"].)  That is, *Samantha F.* reasons that because every prepetition removal *of an Indian child* (with or without a warrant) is an emergency removal *under section 1922*, it follows that every prepetition removal of *any child* (with or without a warrant) is an emergency removal *under BIA guideline C.7.*  Thus, as interpreted by *Samantha F.*, the BIA guidelines actually recommend extended family inquiry for all prepetition removals, with or without warrants, so the BIA guidelines do not support *Robert F.*'s interpretation of section 224.2(b).

The analysis is unsound because, assuming for the sake of argument that *Samantha F.* is right that every prepetition removal of an Indian child is an emergency removal under section 1922, there is no basis to infer that every prepetition removal of

---

**8**      We do not find *Samantha F.*'s argument for that conclusion persuasive.  The argument appears to be that because a prepetition removal of an Indian child is not a child custody proceeding under ICWA, such a removal must be an emergency removal under section 1922.  (*Samantha F.*, *supra*, 99 Cal.App.5th at pp. 1074-1077.)  But a prepetition removal, with or without a warrant, of an Indian child cannot be a child custody proceeding under ICWA for the simple reason that it is not a court action (and it also is not a permanent placement or a placement after termination of parental rights).  (25 U.S.C. § 1903(1)(i)-(iv).)  Rather, such a removal is something done in the field by a social worker or a peace officer.  (See *ante*, fn. 5 [discussing a related issue in *C.L.*, *supra*, 96 Cal.App.5th at pp. 388-390].)  It does not follow that such a removal is an emergency removal under section 1922—not everything that is not a court action is an emergency removal under section 1922.

any child is an emergency removal under BIA guideline C.7.[9]  Section 1922 is one of

ICWA's protections for Indian children.  It provides that nothing in ICWA "shall be

construed to prevent the emergency removal of an Indian child who is a resident of or is

domiciled on a reservation, but temporarily located off the reservation, from his parent or

Indian custodian or the emergency placement of such child in a foster home or institution,

under applicable State law, in order to prevent imminent physical damage or harm to the

child."  (§ 1922.)  That is, section 1922 states that ICWA does not prevent the emergency

removal of Indian children as long as the imminent physical damage or harm standard is

met.  Section 1922 does not define the term "emergency removal."  But more importantly

for our purposes, section 1922 says nothing about the inquiry, investigation, and notice

process for determining whether a child is an Indian child.

BIA guideline C.7, in contrast, is expressly about that process.  The guideline is

entitled "Identifying Indian children in emergency situations," and it recommends asking

"family and extended family whether the child is a Tribal member or whether a parent is

---

[9]     We express no opinion on whether a prepetition removal of an Indian child
pursuant to a protective custody warrant constitutes an emergency removal within the
meaning of section 1922.  In our view, the question is difficult to answer because neither
section 1922 nor any other federal statute or regulation contains a definition of
"emergency removal."  But the question is also unnecessary to answer because, under
California law, (1) an Indian child cannot be removed at any time up to and including the
detention hearing unless removal is necessary to prevent imminent physical damage or
harm to the child, and (2) that is the standard for warrantless removal of an Indian child.
(§§ 306, subd. (c), 319, subd. (d).)  Thus, anytime a prepetition removal of an Indian
child is authorized, a warrantless removal of the same child is authorized.  Given that no
warrant is needed and the circumstances are exigent—the child is in danger of imminent
physical damage or harm—it is not clear why the social worker in such a case would ever
seek a warrant or how they could find the time to seek one if they were so inclined.

a Tribal member and the child is eligible for membership." (BIA guidelines, p. 28.) That recommendation is concerned exclusively with determining whether a child is an Indian child, i.e., determining whether the child is a tribe member or eligible for membership and the biological child of a tribe member. It says nothing about the protections that apply to Indian children. And unlike section 1922 and other federal statutes and regulations, the BIA guidelines do define "emergency removal"—guideline C.2 explains that an emergency removal is a removal "without court authorization." (BIA guidelines, pp. 23-24, 28; see *Andres R.*, *supra*, 94 Cal.App.5th at pp. 849-851.)

A central problem with *Samantha F.*'s reasoning, then, is that we cannot draw inferences about the inquiry process that applies to all children from a non-inquiry protection that applies only to Indian children. And the inference drawn by *Samantha F.* is particularly unsupported, because it starts with a statute (§ 1922) that does not define "emergency removal" and then draws a conclusion about the meaning of "emergency removal" under the BIA guidelines, but that conclusion is contrary to the BIA guidelines' own definition of "emergency removal."

*Samantha F.*'s only attempt to defend the inference consists of the following sentence: "If an Indian child is identified in any California prepetition removal, an emergency proceeding and its standard is required, so the recommendation of BIA Guidelines section C.7 applies to all prepetition removals." (*Samantha F.*, *supra*, 99 Cal.App.5th at p. 1078.) The argument appears to be that (1) because any child might turn out to be an Indian child, and (2) a prepetition removal of an Indian child must meet the imminent physical damage or harm standard for an emergency removal, it follows

31

that (3) all prepetition removals of all children must be emergency removals under BIA guideline C.7.

The argument does nothing to fill the inferential gap already identified, and if anything it makes the invalidity of the inference even more apparent. If the ultimate conclusion were that all prepetition removals of all children must meet the imminent physical damage or harm standard for emergency removals, then the inference might have some surface appeal: A prepetition removal of an Indian child must meet the imminent physical damage or harm standard, and any child might turn out to be an Indian child, so any prepetition removal of any child should meet that standard. But we know that inference is unsound—the imminent physical damage or harm standard applies only if there is reason to know the child is an Indian child. (§ 306, subd. (c).) If there is not reason to know that the child being removed is an Indian child, then other standards apply. (§§ 305, 305.6, 306, subds. (a)-(b), 340, subd. (b).) And because that inference is unsound, the more radical inference drawn by *Samantha F.*—that because a prepetition removal of an Indian child must meet the imminent physical damage or harm standard, and any child might turn out to be an Indian child, it follows that the extended family inquiry recommendation of BIA guideline C.7 applies to all children—cannot possibly be valid.

There is at least one further problem with *Samantha F.*'s discussion of this issue: Recall that the BIA guidelines' only role in *Robert F.* and similar cases is that the guidelines' recommendation of extended family inquiry for warrantless removals explains why the Legislature enacted section 224.2(b), requiring extended family inquiry

32

for warrantless removals. *Samantha F.* offers an alternative interpretation of the BIA guidelines. For the reasons given, we believe that alternative interpretation is incorrect. But even if it were in some sense correct, it would still not undermine the analysis in *Robert F.* for the following reason: There is no reason to believe that the legislators who enacted section 224.2(b) subscribed to, or were even aware of, *Samantha F.*'s interpretation of federal law. Rather, the most reasonable inference remains that the legislators read the BIA guidelines and enacted what the guidelines appear, on their face, to recommend: extended family inquiry for removals "without court authorization," i.e., warrantless removals. (BIA guidelines, pp. 23-24, 28.)

For all of these reasons, we conclude that *Samantha F.*'s discussion ultimately casts no doubt on the treatment of the BIA guidelines in *Robert F.*, *Ja.O.*, and *Andres R.*

E. *Legislative Intent*

Most of the points raised by the dissent do not require additional discussion, but it is worth briefly addressing the dissent's interpretation of legislative intent.

According to the dissent, the Legislature intended the section 224.2(b) duty to apply whenever a child is removed from parental custody either at or before the detention hearing. (Dis. opn., *post*, at pp. 6-8.) (The dissent does not address whether the Legislature intended for the duty to apply to children who are first removed at disposition.) The dissent concedes, however, that that is not what section 224.2(b) says—by its terms, section 224.2(b) does not apply to children who are first removed at the detention hearing. (Dis. opn., *post*, at p. 7.) But the dissent reasons that rule 5.481(a)(1) of the California Rules of Court fills the gap between the statutory language

33

and the Legislature's unstated intent.  (Dis. opn., *post*, at pp. 7-8.)  Thus, rather than conclude (as we do) that the rule is invalid because it conflicts with the legislative intent expressed by the statutory language, the dissent concludes that the rule is valid because it accords with the Legislature's intent, which was not expressed in the statutory language.  (Dis. opn., *post*, at pp. 7-8 [the Legislature "would want" the duty to apply to children first removed at the detention hearing, even though the "strict terms" of the statute do not so provide].)

For several reasons, we find that reasoning unpersuasive.  First, the dissent's assertions about legislative intent are groundless.  The Legislature did not say that the section 224.2(b) duty is triggered whenever a child is removed from parental custody.  If that had been what the Legislature intended, then it would have said so.  The Legislature knows how to refer generally to the removal of a child from parental custody and does so in various dependency statutes.  (See, e.g., § 361.49 ["the date on which the child was initially removed from the physical custody of his or her parent or guardian"]; § 366.22, subd. (a)(1) ["the date the child was originally removed from the physical custody of their parent or legal guardian"]; § 361.5, subd. (a) ["whenever a child is removed from a parent's or guardian's custody"].)  The Legislature did not use any such generic language in section 224.2(b).  Rather, it used very specific language: "temporary custody . . . pursuant to Section 306 or . . . pursuant to Section 307."  (§ 224.2(b).)  It is difficult to understand why the Legislature would choose to use those words if it intended that the duty be triggered whenever a child is removed from parental custody.  The dissent, like

34

*Delila D.* and cases following it, fails to accord any significance to the Legislature's decision to use the language that it used.

Second, rule 5.481(a)(1) of the California Rules of Court itself does not conform to the dissent's understanding of legislative intent. The rule applies in all dependency cases (Cal. Rules of Court, rules 5.481(a), 5.480(1)) and does not require that the child be removed from parental custody (or that "termination of parental rights [be] at issue" (dis. opn., *post*, at p. 7)). Rather, the rule requires only that there be a "party seeking a foster-care placement." (Cal. Rules of Court, rule 5.481(a)(1).) The rule thus imposes the extended family inquiry duty not only more broadly than the terms of section 224.2(b) but also more broadly than the dissent claims the Legislature intended. The dissent fails to acknowledge this and instead concludes that the rule "has it right." (Dis. opn., *post*, at p. 9.)

In our view, the dissent's treatment of all of those issues is unsound. The statutory language is generally the most reliable indicator of legislative intent. (E.g., *People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.) There is no reading of the statutory language according to which it means what the dissent claims the Legislature intended. We believe that the Legislature meant what it said and said what it meant. Our interpretation of section 224.2(b) gives effect to the intent that the Legislature expressed by the language that it used. And because rule 5.481(a)(1) of the California Rules of Court is inconsistent with that intent, it is invalid.

F.     *Extended Family Inquiry and Effective ICWA Enforcement*

Finally, both *Delila D.* and the cases following it appear to be based on the belief that a blanket duty to inquire of all available extended family members in every case is important for effective ICWA enforcement, so limiting that duty to warrantless removals "would significantly undermine the purpose of ICWA."  (*Delila D.*, *supra*, 93 Cal.App.5th at p. 976; see *Jerry R.*, *supra*, 95 Cal.App.5th at p. 426 [the *Robert F.* rule "subverts legislative intent and policy goals underlying California dependency law and ICWA"]; *L.B.*, *supra*, 98 Cal.App.5th at p. 518 [the *Robert F.* rule "'frustrates the purpose of the initial inquiry'"].)  In our view, that belief is mistaken.

ICWA's protections apply only to children who are Indian children within the meaning of ICWA.  (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1009 (*Ezequiel G.*).)  To be an Indian child within the meaning of ICWA, a child must be either (1) a member of a federally recognized tribe or (2) eligible for membership and the biological child of a member.  (25 U.S.C. § 1903(4).)  As *Ezequiel G.* explains, tribal membership "'is voluntary and typically requires *an affirmative act* by the enrollee or her parent.'" (*Ezequiel G.*, at p. 1009.)  Thus, because being an Indian child requires that either the child or a biological parent be a tribe member, and because tribal membership is voluntary and typically requires an affirmative act, *it is typically impossible for a child to be an Indian child without the parents knowing about it*.  As a result, if both of a child's biological parents are available and deny Indian ancestry, then extended family inquiry is all but guaranteed to be pointless.  Such inquiry may uncover some claim of Indian *ancestry*, but it typically cannot reveal that the child is an *Indian child* within the meaning

36

of ICWA unless the biological parents are deliberately concealing the information despite having strong incentives to reveal it.[10]  Moreover, if for some reason the biological parents are deliberately concealing the information because they do not want ICWA to apply to their case, extended family inquiry is still likely to be fruitless—tribal membership is voluntary, so the parents can thwart application of ICWA by renouncing their tribal membership.  (Indian Child Welfare Act Proceedings, 81 Fed.Reg. 38778, 38783 (June 14, 2016).)  For these reasons, a requirement to conduct ICWA inquiry of all available extended family members in every case—even when the biological parents are available and deny Indian ancestry—would appear to be of negligible importance for effective ICWA enforcement.

We are not aware of any empirical evidence that such a requirement has been of any benefit to any tribe, any Indian family or child, or anyone else.  Again, given the definition of "Indian child" and the voluntary nature of tribal membership, one would expect that if both parents deny Indian ancestry, then extended family inquiry might sometimes lead to the discovery of some claim of Indian ancestry but will not lead to the

---

**10**      For example, ICWA and related law impose heightened standards for removal from parental custody and termination of parental rights (25 U.S.C. § 1912(e), (f); 25 C.F.R. § 23.121(a), (b)), require the social worker to use "active efforts" (rather than merely reasonable efforts) to reunify the family (25 U.S.C. § 1912(d); 25 C.F.R. §§ 23.2, 23.120(a)), and provide additional alternatives to termination of parental rights (§§ 366.26, subd. (c)(1)(B)(vi), (c)(2)(B)(iii), 366.24).  Moreover, parents in dependency cases are represented by counsel (§ 317), and court-appointed counsel are subject to minimum requirements for education and training in dependency law (§ 317.5; Cal. Rules of Court, rule 5.660(d)).  Thus, counsel presumably will inform their clients that it is in their interest to disclose any Indian ancestry.

discovery of any Indian children within the meaning of ICWA. We do not know of any evidence that runs contrary to those expectations.

On the other side of the ledger, the mistaken assumption that there is a universal requirement of extended family inquiry has created considerable extra work for already overburdened social workers and juvenile court judges. And that extra work has inevitably created increased opportunities for error, causing widespread disruption in dependency litigation and delaying permanency for hundreds of dependent children. We do not mean to suggest that those costs, though surely nontrivial, are so high that they could not possibly be justified by countervailing benefits. Rather, the point is that requiring ICWA inquiry of all available extended family members in every case is far from costless but in all likelihood produces no benefits.

The foregoing considerations suggest that what "simply doesn't make sense" (*Delila D.*, *supra*, 93 Cal.App.5th at p. 975) is that the Legislature would impose a requirement that appears to be all cost and no benefit in the first place. Fortunately, as *Robert F.*, *Ja.O.*, and *Andres R.* explain, the statutory language shows that the Legislature did not do that. Instead, it did something more reasonable. It required extended family member inquiry only in the subclass of cases in which the children were initially taken from parental custody without court authorization, just as the BIA guidelines recommend. The BIA's recommendation and the Legislature's decision to follow it make sense, because extended family member inquiry is important if the parents are not available, and parental absence is one of the criteria for warrantless removal under both the BIA guidelines and California law.

38

Finally, we wish to emphasize that the importance of scrupulous compliance with ICWA cannot be overstated. ICWA is antigenocide legislation, and to our knowledge it is the most significant federal legislative victory for Indian rights in the history of the United States. (See *Haaland v. Brackeen* (2023) 599 U.S. 255, 297 [143 S.Ct. 1609, 1641] (conc. opn. of Gorsuch, J.) [ICWA was a response to federal, state, and private attacks on the Indian family that "presented an existential threat to the continued vitality of Tribes"].) Rigorous enforcement of ICWA and related California law is imperative.

But more ICWA *inquiry* does not always mean more or better ICWA *enforcement*. If in the future the Legislature decides that the negligible benefits of a universal duty of extended family inquiry are worth the nontrivial costs, and the Legislature enacts such a duty—perhaps by deleting or revising the conditional language in section 224.2(b)—then that legislative command must be rigorously enforced, just like every other part of ICWA and related California law. But as far as we can determine from the statutory language and the authorities and analysis adduced to date, no such legislative command currently exists.

For all of the foregoing reasons, we continue to believe that the duty to inquire of extended family members under section 224.2(b) is triggered only if the child was taken into temporary custody without a warrant, which did not occur in this case. Accordingly, we reject Mother's argument and affirm the order terminating parental rights.

39

DISPOSITION

The order terminating parental rights is affirmed.

CERTIFIED FOR PUBLICATION

MENETREZ_____

J.

I concur:


MILLER_____
        Acting P. J.

40

[*In re D.M.*, E082401]

RAPHAEL, J., dissenting.

The federal Indian Child Welfare Act (ICWA) and its California analogue apply identically in California dependency cases whether a child is initially removed by warrant or without one. ICWA procedures meant to aid in keeping Indian children in Indian homes are the same either way. So is the inquiry into whether a child is Indian.

The majority errs in following recent cases from our division wrongly holding the duty to inquire of "extended family members" about whether a child is Indian is triggered only when the children are taken into custody without a warrant. (See *In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*), review granted July 26, 2023, S279743). Rather, "there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home." (*In re Delila D.* (2023) 93 Cal.App.5th 953, 962, review granted Sept. 27, 2023, S281447.)

I

Whether a warrant is used or not, a California dependency case with an Indian child involves an "emergency removal" in an "emergency proceeding" under ICWA.

Congress enacted ICWA in 1978 to provide minimum federal standards for removing Indian children from their families and guidance for placing them in homes reflecting "the unique values of Indian culture." (25 U.S.C. § 1902.) The statute applies to "child custody proceedings," which it defines as actions involving foster care, the termination of parental rights, or adoption. (25 U.S.C. § 1903(1).)

1

ICWA gives Indian tribes exclusive jurisdiction over child custody proceedings involving Indian children domiciled on the tribe's reservation, or who are wards of the tribe, and concurrent jurisdiction over proceedings involving other Indian children. (25 U.S.C. § 1911.) It requires ten days' notice to tribes of their right to intervene in a state removal or placement hearing. (25 U.S.C. § 1912(a).) It requires a demonstration of "active efforts" to prevent the Indian family's breakup. (25 U.S.C. § 1912(d).) It enacts standards for removal and foster care placement, including requiring expert testimony about harm to the child from the parent. (25 U.S.C. § 1912(b) – (f).) And, where a removal occurs, it prioritizes placement of Indian children with the Indian child's family, members of the tribe, or other Indian families. (25 U.S.C. § 1915.)

But ICWA's subchapter on child custody proceedings provides for an exception to those requirements for an "emergency removal" of an Indian child. (25 U.S.C. § 1922.) "Recognizing . . . that a Tribe may not always be able to take swift action to exercise its jurisdiction, Congress authorized States to take temporary emergency action." (81 Fed. Reg. 38778, 38816.) States may do so "to prevent imminent physical damage or harm to the child." (*Id*. at p. 38817) The emergency removal must "terminate immediately" if "no longer necessary to prevent imminent physical damage or harm." (*Ibid*.) Emergency removals are to "be as short as possible." (*Id*. at p. 38818.) If an Indian child is not returned home or jurisdiction transferred to a tribe, states must expeditiously "initiate a child custody proceeding subject to all ICWA protections." (*Ibid*.)

In every California dependency case involving an Indian child, the removal at the initial hearing (often called the detention hearing) is an emergency removal.  That hearing is governed by Welfare and Institutions Code section 319.  (Undesignated statutory citations here refer to that Code.)  As our Legislature put it: "In the case of an Indian child, the hearing pursuant to Section 319 shall be considered an emergency removal under Section 1922 of the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1922)."  (§ 315.)  The Legislature reiterated in section 319 that an order detaining an Indian child through the section "shall be considered an emergency removal within the meaning of Section 1922 of the federal Indian Child Welfare Act of 1978."  (§ 319, subd. (i).)  A detention hearing occurs in every dependency case—warrant or not—where a child is removed from parents.  If the child is Indian, a removal at that hearing is an emergency removal under the ICWA.

Every initial removal of a child in a California dependency case also comes in what federal regulations define as an "emergency proceeding."  In June 2016 regulations meant to improve ICWA's implementation, the Department of the Interior's Bureau of Indian Affairs defined an "emergency proceeding" as "any court action that involves an emergency removal or emergency placement of an Indian child."  (25 C.F.R. § 23.2 (2023).)  Our Legislature accordingly defined "[e]mergency proceeding" for dependency purposes as "the initial petition hearing held pursuant to Section 319."  (§ 224.1, subd. (l); see § 224.1, subds. (d)(1), (d)(1)(A) ["emergency proceeding under section 319" and "emergency proceeding requirements set forth in section 319"]; § 319, subd. (i)

3

[detention order occurs in an "emergency proceeding")]. Thus, under both federal regulations and California statutes, a detention hearing involving an Indian child is an "emergency proceeding." That is so whether a warrant is used or not.

For any detention hearing involving an Indian child, our Legislature adapted the federal "standards for emergency proceedings involving an Indian child" in the 2016 regulations. (25 C.F.R. 23.113 (2023).) The requirements for a "petition for a court order authorizing the emergency removal or continued emergency placement" became (with small changes) part of our law governing a detention hearing involving an Indian child. (Compare 25 C.F.R. 23.113(d)(1)-(10) (2023) with § 319, subds. (b)(1)-(9).) If, by the detention hearing, a court has reason to know a child is Indian, the county social worker must provide "a specific and detailed account of the circumstances that caused the Indian child to be taken into temporary custody" and information about the "imminent physical damage or harm." (§ 319, subds. (b)(7), (b)(1).) This is because—whether a warrant has been used or not—at the detention hearing, a court "may only detain the Indian child if it also finds that detention is necessary to prevent imminent physical damage or harm." (*Id*., subd. (d).) The court must state the facts supporting that finding. (*Ibid.*) The social worker must also provide other information about notice to the tribe, potentially keeping the child with the parents, and placing the child in an Indian home. (*Id*., subds. (b)(2)-(6), (8)-(9).) This is because the trial court must make other findings about efforts to prevent the family breakup or comply with ICWA placement preferences. (*Id.*, subds. (f)(2), (f)(3), (h)(1)(C).) These requirements apply, warrant or not, to an

4

Indian child's detention hearing. (See also Cal. Rules of Court, rules 5.480(1), 5.484; undesignated rules references here refer to the Cal. Rules of Court.)

Under the above statutes, then, in *any* dependency case where a child is removed from their parents and the county then learns that the child is Indian, the detention hearing is an emergency proceeding to determine whether the ICWA emergency removal standard is met, and, if so, to place the child accordingly. If the emergency proceeding continues (without transfer to a tribe or the return of the child to parents), the case must then progress to a child-custody proceeding in accord with ICWA's protections. This is the process with any Indian child, whether a warrant was used or not.

## II

The section above explains the emergency proceeding that occurs in a California dependency case if a removed child is Indian, whether or not a warrant is used. The issue before us, however, is about the duty to inquire whether a child is Indian. Like the emergency proceeding, the inquiry duty is not affected by whether a warrant is used to take the child from the parents.

The "initial inquiry" duty applies when a county department has no reason to believe a child is Indian. When a department conducts an initial inquiry, there is no "emergency proceeding" under ICWA, as there is no emergency removal or placement of an Indian child. (25 C.F.R. § 23.2 (2023).) If the initial inquiry reveals reason to believe that a child is Indian, a duty of "further" inquiry applies. (§ 224.2, subd. (e).) An initial inquiry leads to an ICWA "emergency proceeding" if it reveals "reason to know" a child

5

is Indian. Then, the county department must provide information to justify the emergency removal of an Indian child, while the court must determine whether the removal is warranted and consider placement options. (See § 319, subd (b).)

The initial inquiry duty comes from two code subsections. First, from the outset of a dependency investigation, a county welfare department has an "affirmative and continuing duty" to inquire into whether the child involved is Indian. (§ 224.2, subd. (a).) The general duty thus applies during the early investigation of an allegation against a parent or guardian, and it applies when children are maintained with their families. The "'affirmative and continuing'" language means that a county welfare department's duty lasts throughout the dependency. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 11.)

If an investigation proceeds such that a child is removed from home, the initial inquiry duty becomes more specific, including requiring inquiry of extended family members. Section 224.2, subdivision (b), effective January 1, 2019, imposes on the department a duty to ask whether a child placed in the department's temporary custody under section 306 is an Indian child, an inquiry that "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (*Ibid.*; see Assembly Bill No. 3176 (2017-2018 Reg. Sess.), Stats. 2018, ch. 833, § 5 (Assembly Bill 3176).)

Before the court holds a detention hearing, most children are placed in the department's temporary custody under section 306. The custody is temporary because

6

the child is about to be either detained or returned to their parents at the initial hearing. Among the ways that a child can enter the department's temporary custody is by delivery to the department after removal by warrant. (*In re Samantha F*., (2024) 99 Cal.App.5th 1062, 1069.) Section 306 provides for department social workers to receive and maintain temporary custody of children delivered by a peace officer, and the statute authorizing warrants requires that a removed child "shall immediately be delivered to the social worker." (§ 306, subd. (a)(1); § 340, subd. (c).) In adding the provision requiring delivery to the social worker in the bill that created the warrant process, the author explained it was meant to clarify that provisions for children placed in the department's temporary custody applied to children removed by warrant. (*In re Samantha F*., *supra*, 99 Cal.App.5th at p. 1084.)

At times, a child is ordered detained for the first time at the initial hearing without entering the department's temporary custody. Then, the strict terms of the statute would not trigger the extended family inquiry duty, which begins when the child is taken into the department's temporary custody. But in that circumstance our rules of court impose the same duty. Rule 5.481(a)(1) applies the duty to inquire of extended family members in all dependency cases where termination of parental rights is at issue. (See Dept. of Social Services Regs. 31-101.11, 31-125.225 (DSS).) The rule aligns with the statute's placement of an affirmative and continuing duty to inquire into whether children are Indian. The Legislature created the inquiry to protect ICWA's interest in the removal and placement of Indian children in homes reflecting Indian culture. (See 25 U.S.C. § 1902.)

7

That interest applies equally to children removed for the first time at a hearing, so the Legislature would want the affirmative inquiry duty to cover them.

In the legislative history of Assembly Bill 3176, there is no express explanation for the inclusion of the extended family inquiry. There are two possible sources of the idea. One is the Bureau of Indian Affairs *Guidelines for Implementing the Indian Child Welfare Act* (December 2016) (BIA Guidelines) <https://perma.cc/GZ3G-PJYC> [as of May 3, 2024]. Chapter C of that guidance concerns "emergency proceedings" and contains nine guidelines with recommendations about implementing the 2016 ICWA regulations about those proceedings. In interpreting 25 Code of Federal Regulations part 23.113 (2023), which provides the standards for emergency proceedings, guideline C.7 recommends in emergency situations "the State agency ask the family and extended family whether the child is a Tribal member" or whether the child is eligible for membership due to a parent. That inquiry leads to an emergency proceeding if it reveals a reason to know the child is Indian. In a California dependency case, that emergency proceeding is the detention hearing, for which our Legislature has adapted procedures from the regulation guideline C.7 interprets (25 C.F.R. § 23.113 (2023)). That detention hearing occurs with an Indian child, warrant or not. If our Legislature looked to guideline C.7 in creating the extended family inquiry, it would apply that inquiry in all situations that could result in an emergency proceeding. There would be no reason to exclude cases with warrants.

8

The second possible source is the 2017 report of an ICWA task force appointed by the State Attorney General, which concluded "initial inquiry should not be made only to the parents" and explained its reasons for that conclusion. (Cal. ICWA Compliance Task Force, Report to the Cal. Attorney General's Bureau of Children's Justice, p. 28 <https://perma.cc/33BK-Z8XV> [as of May 3, 2024].(Task Force).) The executive director of the group that sponsored Assembly Bill 3176 in 2018 testified in introducing the bill that her organization was "'a successor organization'" to the task force and was formed to implement it. (*In re Samantha F.*, *supra*, 99 Cal.App.5th at pp. 1081-1082.) The report also provides no reason to exclude children removed by warrant from an extended family inquiry duty.

Regardless of which of these sources inspired the Legislature, the simple answer to the question before us is that rule 5.481(a)(1) has it right. The duty to inquire of extended family about whether a child is Indian applies in all dependency cases where parents face the termination of parental rights. The use of a warrant does not matter.

III

For about four years after our Legislature in 2018 enacted the requirement that county welfare departments inquire of extended family as part of the initial inquiry, federal ICWA law played no role in caselaw interpreting that requirement. Instead, our courts simply applied the extended family inquiry in all dependency appeals. (See, e.g., *In re M.M.* (2022) 81 Cal.App.5th 61, 65, 70 [stating, in case where children were removed by warrant, that the initial inquiry duty requires departments to ask extended

9

family about the child's Indian ancestry "in every case"].)  Applying the requirement in this way was not controversial.

But then the concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342, 353-374 (Kelley, J., concurring) (*Adrian L.*) contended that our Legislature intended for the extended family inquiry to apply only in cases without warrants.  The opinion read the statutes as meaning that among the children awaiting detention hearings in child welfare department custody, only those removed without a warrant are in "temporary custody" under section 306; children removed by warrant are in the department's "'protective custody'" but not in "'temporary custody.'"  (But see *In re Samantha F.*, *supra*, 99 Cal.App.5th at p. 1070 [contrary view that "temporary custody" means in custody awaiting a detention hearing, so all such children are in temporary custody].)

The *Adrian L.* concurrence argued that its view derived from the 2016 federal ICWA guidelines.  (*Adrian L.*, *supra*, 86 Cal.App.5th at pp. 361-365.)  In so doing, it misread those guidelines.  It concluded that the use of a warrant meant a child's removal was not an "emergency removal" under ICWA, so the recommendation to inquire of extended family in BIA guideline C.7 would not apply.  (*Adrian L.*, at p. 362.)  That misunderstands the federal ICWA statutes and the 2016 guidelines.  (See *In re Samantha F.*, *supra*, 99 Cal.App.5th at p. 1078.)

The *Adrian L.* concurrence focused on the California *standard* for warrant removals.  (*Adrian L.*, *supra*, 86 Cal.App.5th at pp. 362-363.)  In California, *non*-warrant removals require the "imminent physical damage or harm" needed for an emergency

10

removal of an Indian child, but removals by warrant are allowed if there is just a "'substantial danger'" of "*emotional*" damage.  (See *In re Samantha F*, *supra*, 99 Cal.App.5th at p. 1079.)  The *Adrian L.* concurrence concluded from this distinction that the removal by warrant of an Indian child "would not be an 'emergency removal' under federal law."  (*Adrian L.*, *supra*, 86 Cal.App.5th at pp. 363-364.)

In fact, if an Indian child is involved, federal law requires—in either case, warrant or not—justification of an emergency removal at a detention hearing under the "imminent physical damage or harm" standard.  (See *In re Samantha F.*, *supra*, 99 Cal.App.5th at p. 1079.)  "Any prepetition removal of an Indian child is subject to the ICWA emergency proceeding standard, requiring imminent physical damage or harm—no matter that California law would allow removal of *non*-Indian children using a lesser standard, if a warrant is obtained."  (*Id*. at pp. 1080-1081.)

Today's majority opinion does not defend the *Adrian L.* concurrence's argument that the lower *standard* for California removal warrants means that an Indian child is not in an emergency removal if removed by a warrant.  Instead, the majority opinion relies on a different argument, based on the nature of a warrant.  It reads BIA guideline C.2 as defining an "emergency removal" as one "without court authorization."  (Maj. opn., *ante*, at pp. 8-9, 17-18, 36.)  It concludes this BIA guideline means removals by warrant are not emergency removals, and our Legislature made a "decision to follow it."  (*Id*. at pp. 9, 36.)

11

There are two broad flaws in this argument. One is that our Legislature has defined *every* detention hearing involving an Indian child as an emergency removal in an emergency proceeding, as discussed in section I, above. Even if the majority were correct that federal law provides less ICWA protection when a child is initially removed by warrant than exists for an emergency removal, our Legislature's decision to provide stronger protection would still govern. (25 U.S.C. § 1921.) And its view that every detention hearing is an emergency removal means that our Legislature did not decide that some are not.

The second broad flaw is that under ICWA there is no *less* protective option for the removal of an Indian child than an emergency proceeding. The only other option is a child-custody proceeding subject to full ICWA protections. If a detention hearing involving an Indian child removed by warrant is not an emergency proceeding, then the *more* protective child-custody proceeding is the only other option. The majority suggests the detention hearing involving an Indian child removed by warrant is somehow subject to neither full ICWA protections nor the rules governing emergency removals. Federal law offers no such option.

Along with these two broad flaws, the majority's reading of the BIA guidelines is wrong. The BIA guidelines, like the federal regulations, are written to apply across 50 states. Guideline C.1 interprets the definition of "emergency proceeding," which "includes any court action that involves an emergency removal or emergency placement of an Indian child." It cites to 25 United States Code section 1922, which it identifies as

12

the statutory authority allowing states to remove children "notwithstanding the provisions of" ICWA to "prevent imminent physical damage or harm to the child." It recognizes that states use "different . . . terminology for emergency hearings" but they are meant to cover proceedings needed to "prevent imminent physical damage or harm to the child." (BIA Guidelines, C.1, p. 23.) This means that whatever method a county welfare department uses to remove an Indian child, it must either satisfy all the provisions of ICWA (a child-custody proceeding) or satisfy the "imminent physical damage or harm to the child" standard for an emergency hearing (under California law, the detention hearing.) As there is no time to give ten days' notice to the child's tribe (25 U.S.C. § 1912(a)) before a detention hearing, the only option for such a hearing is an emergency hearing to determine whether the emergency removal standard is satisfied. Warrant or not, there is no other option for removing an Indian child.

Rather than focusing on that BIA guidance about the *definition* of emergency proceeding in guideline C.1, the majority focuses on a phrase in the commentary in guideline C.2. This commentary addresses a state's showing to justify an emergency removal, that is, that the removal is "necessary to prevent imminent or physical damage or harm to the child." (Guideline C.2 [quoting 25 C.F.R. 23.113(b)(1) (2023)].) According to the commentary, the BIA believes that standard is needed to justify removing any child (not just an Indian child) without due process. The commentary then acknowledges that children can be removed "without court authorization" in emergency circumstances. This is what the majority concludes is a BIA "recommendation" that

13

"extended family member inquiry [is required in] only the subclass of cases in which the children were initially taken from parental custody without court authorization." (Maj. opn., *ante*, at p. 36.)

The BIA guideline recommends nothing of the sort. It simply recognizes that children can and sometimes must be removed without prior court authorization. It does not suggest that due process generally, or ICWA more specifically, is satisfied when children are removed by an ex parte court order, such as a warrant. Such removals still need to be justified at a court hearing—such as California's detention hearing—both for non-Indian children and Indian children. Warrants are nowhere discussed in the BIA guidance, which was issued in 2016, before California's prepetition dependency warrant process was enacted in 2017. A child removed with such a warrant is still subject to a section 319 detention hearing. If the removed child is Indian, that detention hearing is by definition an emergency removal in an emergency proceeding, and it includes the ICWA emergency removal procedures discussed in the BIA guidelines C.3, C.4, C.5, and C.6. There is no good reason why the removal of a child by warrant should not trigger the recommended guideline C.7 inquiry procedure that even the majority believes applies when children are removed *without* a warrant. Federal ICWA law supports the identical treatment of our dependency cases, whether a warrant is used for removal or not.

IV

Following are comments on five more items.

14

First, the majority opinion suggests the Legislature might have required extended family inquiry in warrantless cases (but not those with warrants) because parents might more often be absent at the time of such a removal. (Maj. opn., *ante*, at pp. 10, 11, 26, 36.) Nothing suggests that the Legislature considered that issue. But, in any event, the notion that warrantless removals more often include absent parents is speculation. The most prominent reason for a warrantless removal is that the child faces an "immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety." (§ 306, subd. (a)(2).) Unfortunately, it is often one or both parents who pose this immediate threat to the child, requiring immediate action without prior court authorization. Absent or uncooperative parents, on the other hand, may well pose a less immediate threat, so the department has time to obtain a warrant. (See, e.g., *In re Robert F.*, *supra*, 90 Cal.App.5th at p. 498 [department "was unable to interview Mother" before detention hearing]; *In re Andres R.* (2023) 94 Cal.App.5th 828, 838, review granted Nov. 15, 2023, S282054 [social worker "was unable to ask Father about Indian ancestry because of his refusal to be interviewed"]; *In re Jerry R.* (2023) 95 Cal.App.5th 388, 405-406 ["Father and Mother refused to cooperate" with investigation and to execute warrant "police forced entry after Mother refused to open the door."])

Second, the majority opinion places some emphasis on the possibility that a child might not be delivered to the welfare department by a "peace officer" after execution of a warrant. Section 306, subdivision (a)(1), authorizes departments to take temporary custody over children "delivered by a peace officer." Tying to that language, the

15

Legislature required in 2017 that "[a]ny child" taken into protective custody by a warrant "shall immediately be delivered to the social worker. . . ."  (§ 340, subd. (c).)  Not only does that language show that the Legislature intended children removed by warrants to enter the department's temporary custody, but the author of that 2017 provision explained that it was added to ensure that children removed by warrant were subject to the departmental procedures for children taken into temporary custody.  (*In re Samantha F.*, *supra*, 99 Cal.App.5th at p. 1084.)  If state regulations are followed, it will always be a peace officer that delivers the child removed by a warrant, because a social worker must be "deputized as a peace officer" or "shall" request law enforcement assistance when placing a child into temporary custody, unless the social worker takes custody directly under § 306.  (DSS Regs. §§ 31-130.1, 31.130.12.)  Given the existing law, it is reasonable to conclude that when the Legislature in 2018 tied the "extended family" inquiry to the child entering the department's temporary custody, it would have expected all the children in the department's custody to be covered. Even if in some cases a person who is not a "peace officer" delivers the child into a department's temporary custody, rule 5.481 accords with legislative intent by applying the duty to all cases involving removed children.

Third, as explained in *In re Samantha F.*, reading "temporary custody" to include only children removed without warrants must be incorrect because it would have unintended consequences in other places where the term "temporary custody" is used. (*In re Samantha F.*, *supra*, 99 Cal.App.5th at p. 1071.)  Although these consequences

16

have never been recognized or alluded to by the Legislature or caselaw, the majority opinion embraces them, even arguing that they were intended. Accepting the majority's view of the statute, then, means accepting there is differential treatment between children removed with and without warrants in a provision about housing minors with adults. (See maj. opn., *ante*, at pp. 24-26 [discussing § 206].) It means accepting that a social worker has no statutory duty to act when a child needs "medical, surgical, dental, or other remedial care" if a court issued a warrant authorizing the child's removal. (§ 369; see maj. opn., *ante*, at p. 23, fn. 6 [discussing § 369].) It means accepting that the Legislature intended the social worker's report to a court for an Indian child's detention hearing need not include an account of the circumstances that caused the child's "temporary custody," because those circumstances were earlier put in a request to the judge who issued a warrant. (See maj. opn., ante, at pp. 23-24 [discussing § 319, subd. (b)(7)].) It is implausible the Legislature so intended. The better view, articulated in *In re Samantha F.*, is that the Legislature considered all children in custody awaiting their detention hearing to be in "temporary custody." The same procedures apply to all these removed children.

One provision is worth special focus. The majority opinion is wrong that the duty section 306, subdivision (d), imposes on social workers to contact a tribe that has exclusive jurisdiction over an Indian child is limited to warrantless removals. (Maj. opn., *ante*, at pp. 22-23.) Section 306, subdivision (d), applies to children placed in the department's "temporary custody." The social worker's duty under this subdivision is

17

triggered, for example, if a child comes into a department's temporary custody on a warrant, and the department learns the child is a ward of an Indian tribe. Then, the department must act under section 306, subdivision (d), to "transfer custody of the child to the tribe." The Department of Social Services accordingly requires that a social worker who learns "that an Indian child who has been removed from the custody of his or her parent(s)" is subject to a tribe's exclusive jurisdiction must transfer the child to the tribe, preferably before a dependency petition is ever filed. (DSS Reg. 31-135.234, 31-135.234(a).)

The majority believes that in the situation where a warrant issued, section 305.5, subdivision (b) applies instead of section 306, subdivision (d), so the juvenile *court* must contact the tribe to determine whether the tribe wants to "accept transfer" of the case. (Maj. opn., *ante*, at p. 22.) Not so. Section 305.5, subdivision (b), requires a court to act during a "child custody proceeding" if it learns that an Indian tribe has exclusive jurisdiction over a child, but what it requires the court to do is *dismiss* the case. Section 305.5, subdivision (b), does not allow a court to "transfer" an exclusive jurisdiction case; a transfer would be an exercise of authority that the law does not grant the juvenile court. (See 25 C.F.R. § 23.110 (2023) [mandatory dismissal provision that section 305.5 tracks]; Initial Statement of Reasons for DSS Reg. 31-136.32 ["If a tribe has exclusive jurisdiction over the child custody proceeding, however, the state court has no authority to make decisions regarding the child. It must therefore dismiss the dependency case."];

18

see also 25 U.S.C. § 1919 [exception where state and tribe have an agreement between the sovereigns].)

Before a petition is filed, though, there is no case to dismiss. The point of the Legislature's 2018 creation of section 306, subdivision (d), was to require *the department* to act to transfer the child, rather than initiating a case over which the juvenile court lacks jurisdiction. (See Initial Statement of Reasons for DSS Reg. 31-105.11 [amendments made by Assembly Bill 3176 in 2018 "require child welfare services agencies to perform such jurisdictional screens as early as possible in order to avoid initiating dependency cases in state court where the state lacks jurisdiction"]). Section 306, subdivision (d)'s use of the term "temporary custody" shows that the Legislature understood it to include all children awaiting their prepetition detention hearing. It is not tenable to conclude that the Legislature would require social workers to transfer children to tribes with *exclusive* jurisdiction over them where the children are taken into custody without a warrant but not with one.

Fourth, the majority offers its belief that a blanket requirement of extended family inquiry includes situations where the biological parents both deny Indian ancestry, rendering it "pointless" or of "negligible importance" to ICWA enforcement. (Maj. opn., *ante*, at p. 33-37.) The majority postulates that it is typically impossible for a child to be Indian without the parents knowing it, and that parents would not conceal their tribal connection. (Maj. opn., *ante*, at p. 34) This belief is directly contradicted by prominent California evidence on the issue when the Legislature enacted Assembly Bill 3176. The

19

bill was 2018 legislation sponsored by a group formed to implement recommendations in the 2017 Attorney General's task force report. The report recommended initial inquiry of extended family about whether a child is Indian because parents "may not have that information, or may possess only vague or ambiguous information. [¶] [They] may be fearful to self-identify . . . . [and] may even wish to avoid the tribe's participation or assumption of jurisdiction." (Task Force, p. 28.) That conclusion came after testimony, feedback, surveys, and interviews. (Task Force p. 1.) The task force recommendation supports applying the extended family inquiry uniformly in a blanket manner.

Instead, the majority's view is that the policy behind the requirement was to apply the extended family inquiry only to children removed without a warrant. This conclusion combines the majority's view that inquiry of the parents is adequate with its belief (discussed as the first point in this section above) that parents are more often absent when a child is removed without a warrant. From those two beliefs, the majority concludes that the Legislature acted to require the extended family inquiry only in cases where removal was without a warrant. But neither of the majority's two views were mentioned in the legislative history of Assembly Bill 3176, nor in any identified study, like the task force report. Indeed, for several years after Assembly Bill 3176, the legislative policy was construed in the way the majority opposes. (E.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 ["the point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child" is "to obtain information the parent may not have"]).] During those years, a rule of court and administrative

20

regulations were adopted—after public comment—to apply the extended family inquiry as a blanket matter. (*In re Samantha F.*, *supra*, 99 Cal.App.5th at pp. 1072-1073.) The majority's views on what policies the Legislature had in mind are new to the scene.

Moreover, the majority's views rest on a subtle misunderstanding of the purpose of the initial inquiry. The focus is not to discover information that will "reveal that the child is an *Indian child*" (maj. opn., *ante*, at p. 34), but information that *suggests* the child is Indian, requiring inquiry of, or notice to, a tribe so that *it* may determine whether the parent or the child is a tribe member. (See *In re T.G.* (2020) 58 Cal.App.5th 275, 292-297.) Whether a child or a parent is a tribal member is "solely within the jurisdiction and authority of the Tribe . . . ." (25 C.F.R. § 23.108(b) (2023); *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 8.) A tribe's determination is "conclusive" on our courts. (§ 224.2, subd. (h).) When notice is provided to a tribe, that "often requires providing a tribe with extensive biographical data (that is, information about ancestors and ancestry), which is why section 224.3, subdivision (a)(5)(C), prescribes in detail the information about parents, grandparents and great-grandparents that must be included in an ICWA notice." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 294.) Indian ancestry learned from extended family can provide a tribe a basis to determine the child is an Indian child. (See *In re S.R.* (2021) 64 Cal.App.5th 303, 315-316 [discovery from extended family that great-grandmother was a Yaqui tribe member triggered a duty for the department to inquire further, including by contacting the Yaqui tribe].)

21

Fifth, and finally, this case's path helps illustrate the oddity of tying the scope of the ICWA inquiry to the way a child is placed in temporary custody. The investigation here began on November 19, 2020, and this appeal was taken from the order terminating parental rights nearly three years later, on October 12, 2023. In the midst of that span exceeding 1000 days, the child was detained on a protective custody warrant for five days, from March 25 through March 30, 2021. Under the majority's view, the fact that those five days in custody were on a warrant restricts the scope of the ICWA inquiry. It is implausible the Legislature intended that. It may be debatable how much inquiry of extended family members is the minimum required (or that should be required) in a family's particular circumstances. But those five days have nothing to do with it.

Rule 5.481 has this matter correct. Counties are to inquire of extended family about a child's Indian heritage in all dependency cases where children are removed from their parents. The majority opinion's approach of declaring that rule "invalid" as in conflict with what the Legislature wanted (maj opn., *ante*, at p. 15) perpetuates a misreading of the law that began with the *Adrian L.* concurrence. *Delila D.* and the divisions that follow it have charted the course that we should follow. (See *In re C.L.* (2023) 96 Cal.App.5th 377; *In re Jerry R.* (2023) 95 Cal.App.5th 388; *In re V.C.* (2023) 95 Cal.App.5th 251; *In re L.B.* (2023) 98 Cal.App.5th 512.)

V

I respectfully dissent because the failure to inquire of D.M.'s readily available extended family members was error. That D.M. was removed by warrant does not

22

matter. As these available family members include six maternal aunts and two paternal aunts, I would not find the error harmless. (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.) I would conditionally affirm and remand for completion of the ICWA inquiry.

RAPHAEL _____
J.